**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JERROLD B. KNOEPFLER, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 01-5186 (WHW) |
| | : | |
| THE GUARDIAN LIFE INSURANCE | : | |
| COMPANY OF AMERICA and | : | |
| BERKSHIRE LIFE INSURANCE | : | |
| COMPANY OF AMERICA, a subsidiary of | : | |
| The Guardian Life Insurance Company of | : | |
| America, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

This diversity action arose from the denial of disability insurance benefits by The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America ("Defendants") to Jerrold B. Knoepfler ("Plaintiff"). Plaintiff's Amended Complaint alleges that Defendants: 1) breached the insurance contracts issued to Plaintiff, 2) violated the implied covenant of good faith and fair dealing, and 3) are liable for punitive damages. Defendants now move for partial summary judgment on Plaintiff's claims of bad faith and punitive damages. Plaintiff cross-moves for summary judgment on the same claims. Defendants' motion for summary judgment is granted; Plaintiff's motion is denied.

### FACTS AND PROCEDURAL HISTORY

In September 1995, Plaintiff notified Defendants of his claim for benefits under two disability insurance policies: Policy No. G-709770, an individual disability policy ("Individual

NOT FOR PUBLICATION

Policy") and Policy No. G-709771, a business overhead expense disability policy ("Business

Policy") (together, the "Policies").  (Certification of Robert P. Lesko ("Lesko Cert."), Ex. C.)

Plaintiff claimed that he became disabled in November 1992 when he began to suffer from

depression and other psychological problems.  (Id., Ex. D.)  According to Plaintiff, he sought

treatment for his psychological illness in late 1992 but was in denial regarding his condition and

did not realize that he was eligible for insurance benefits until September 1995.

   To qualify for benefits under the policies, Plaintiff was first required to submit a "Notice

of Claim."  The Notice of Claim provision states, in relevant part:

> You must give us notice of claim within 30 days after any loss
> which is covered by this policy occurs or starts, or as soon after that
> as is reasonably possible.

(Lesko Cert., Ex. A (Individual Policy, p. 6) and Ex. B (Business Policy, p. 9).)  After submitting

a Notice of Claim, Plaintiff was next required to submit a "Proof of Loss."  The relevant portion

of the Proof of Loss provision in the Individual Policy reads as follows:

> **Time for filing proof of loss**
>
> We are liable for benefits at the end of each month while you are
> disabled beyond the elimination period until the benefit period
> ends or, if earlier, the date you recover.
>
> You must give us proof of loss at our home office or at any agency
> office [] for loss from disability within 90 days after the end of the
> period for which we are liable ....
>
> If you cannot reasonably give us proof within such time, we will
> not deny or reduce your claim if you give us proof as soon as
> possible.  But we will not pay benefits in any case if proof is
> delayed for more than a year, unless you have lacked legal
> capacity.

NOT FOR PUBLICATION

(Id., Ex. A, p. 6.)[1]  The Policies further prescribed the period of limitations for legal actions

brought under the Policies:

> No one can bring an action at law or in equity under this policy
> until 60 days after written proof has been furnished as required by
> this policy.  In no case can an action be brought against Guardian
> more than three years after written proof must be furnished.

(Id., Ex. A, p. 6 and Ex. B, p. 9.)  Defendants claim that Plaintiff failed to comply with the Notice

of Claim, Proof of Loss, and the Legal Actions provisions and therefore is ineligible for benefits

under the Policies.

Upon receiving Plaintiff's notice of claim in September 1995 and proof of loss in October

2005, Defendants began an investigation of the claim and by letter dated January 22, 1996,

advised Plaintiff that his claim was denied.  (Lesko Cert., Ex. M.)  Defendants' decision to deny

benefits was principally based on Defendants' determination that Plaintiff was not "totally

disabled."  (Id.)  Defendants so determined because Plaintiff remained as CEO of International

Meat Traders until 1995 and started two companies in 1994 and 1995.  (Id.)  Plaintiff objected to

Defendants' determination and continued to correspond with Defendants.  (Certification of Alan

C. Thomas ("Thomas Cert."), Exs. C, D.)  Defendants confirmed their decision to deny

Plaintiff's claim in writing on April 12, 1996, December 20, 1996 and on March 5, 1997.  (Lesko

Cert., Exs. N, O; Vitarelli Affidavit, Ex. 28.)  In these letters, Defendants also asserted that

------------------------------

[1]  The second paragraph of the Proof of Loss provision in the Business Policy is worded
slightly differently.  It reads: "You must give us proof of loss at our home office or at any agency
office within 90 days after the end of the period of disability for which we are liable."  (Lesko
Cert., Ex. B, p. 9.)

NOT FOR PUBLICATION

because Plaintiff had not submitted his proof of loss until 1995, his claim for benefits was

untimely.  (Id.)

Plaintiff did not contact Defendants again until August 2001, when Plaintiff's counsel

wrote Defendants requesting that Plaintiff's claims be reopened.  (Lesko Cert., Ex. G.)

Defendants denied that request, and on October 10, 2001, Plaintiff filed a complaint in New

Jersey Superior Court, seeking recovery of disability benefits under the Policies.  On November

11, 2001, Defendants removed the action to this Court on the basis of diversity of citizenship.

On March 25, 2004, Defendants moved for summary judgment, arguing that the action

was barred by the three-year period of limitations set forth in the Policies.  Defendants contended

that the phrase "period for which we are liable" in the Proof of Loss provision refers to a monthly

period, such that the proof of loss is required to be furnished within ninety days after the end of

each month of disability for which Defendants are liable.  According to Defendants, Plaintiff was

required to furnish proof of loss within ninety days after the end of the first month of his alleged

disability, that is, by March 31, 1993, or, at the latest, within the one-year grace period thereafter.

Defendants argued that the three-year period of limitations expired by March 31, 1997, and, thus,

this action was not timely filed.  Plaintiff countered that under the terms of the Policies, he was

not required to provide a proof of loss so long as his disability is ongoing.  Because he is still

disabled, Plaintiff argued that the three-year suit limitation period has not yet begun.

This Court noted that "the Policies are ambiguous as to the precise time in which Plaintiff

was required to file his proof of loss . . . ."  (Knoepfler v. Guardian Life Ins. Co. of Am., No.

01-5186, slip op. at 8 (D.N.J. Dec. 22, 2004) ("2004 Order and Opinion").)  Nevertheless, citing

NOT FOR PUBLICATION

to the New Jersey appellate case of <u>Mosior v. Insurance Co. of Am.</u>, 193 N.J. Super. 190, 473

A.2d 86 (1984) and public policy considerations underlying periods of limitations, this Court

granted summary judgment for Defendants.  This Court reasoned that the <u>Mosior</u> court had

"interpreted a similar policy provision to preclude a suit filed more than three years after the

90-day proof of loss deadline had passed, despite the plaintiff's alleged ongoing disability."

(2004 Order and Opinion, at 7.)  It concluded that "it was not reasonable for Plaintiff to believe

that his right to file suit under the Policies would survive four years after the final denial of his

claims."  (<u>Id.</u> at 8.)

On appeal, the Third Circuit reversed, "predict[ing] that the New Jersey Supreme Court

would construe the policy language to require proof of loss after the end of the entire period of

disability" instead of "after the end of each month of disability."   <u>Knoepfler v. Guardian Life Ins.

Co. of Am.</u>, 438 F.3d 287, 288 (3d Cir. 2006).  On remand, Plaintiff sought and was granted

leave to amend the Complaint to include two new claims for relief, a bad faith claim (count four)

and a claim for punitive damages (count five).  On September 20, 2007, Defendants moved for

partial summary judgment on counts four and five of the Amended Complaint.  The Court held

oral argument on September 3, 2008.

## LEGAL STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

NOT FOR PUBLICATION

242, 247-48, 106 S. Ct. 2505, 2510 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-moving party, and it is material if, under the substantive law, it would affect the outcome of the suit.  See id. at 248.  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  To survive a motion for summary judgment, the non-moving party must present "more than a mere scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment."  Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and

NOT FOR PUBLICATION

inferences in the light most favorable to the non-moving party.  See id. at 255; Curley v. Klem,

298 F.3d 271, 276-77 (3d Cir. 2002).

**DISCUSSION**

I.      **Motion for Partial Summary Judgment on Plaintiff's Bad Faith Claim**

Plaintiff's "bad faith" claim against Defendants is governed by New Jersey law.  See

Pickett v. Lloyd's, 131 N.J. 457, 470, 621 A.2d 445 (1993).  In Pickett, the New Jersey Supreme

Court, after surveying the various standards for bad faith among several states, endorsed the

Rhode Island Supreme Court's approach to define what constitutes a claim for "bad faith."  See

id. at 473 (citing Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)).  "If a claim is

'fairly debatable,' no liability in tort will arise."  Pickett, 131 N.J. at 473 (quoting Bibeault, 417

A.2d at 319).

As District Judge Alfred Wolin described, the "New Jersey Supreme Court has prescribed

a somewhat peculiar method to determine whether a claim was 'fairly debatable.'"  Tarsio v.

Provident Ins. Co., 108 F. Supp. 2d 397, 401 (D.N.J. 2000).  Under the "fairly debatable"

standard, "a claimant who could not have established as a matter of law a right to summary

judgment on the substantive claim would not be entitled to assert a claim for an insurer's

bad-faith refusal to pay the claim."  Pickett, 131 N.J. at 473.  In effect, the New Jersey Supreme

Court equated the "fairly debatable" standard for bad faith with the summary judgment standard

of genuine issue of material fact.  Therefore, to decide the present motion, the Court must first

determine whether Plaintiff could have established a right to the summary judgment as to the

underlying breach of contract claims, counts one to three in Plaintiff's Amended Complaint.  If

-7-

**NOT FOR PUBLICATION**

there are genuine issues of material fact that would preclude summary judgment on the

substantive claims in favor of claimant, that is, questions of fact as to whether Plaintiff is entitled

to insurance benefits, then the Court must dismiss Plaintiff's bad faith claim.  See Tarsio, 108 F.

Supp. 2d at 401.

      Here, there are genuine issues of material fact that would preclude Plaintiff from

obtaining summary judgment on his breach of contract claims.  Most glaringly, the parties

vigorously dispute the central issue in counts one and three of the Amended Complaint: whether

Plaintiff was totally disabled.  Although, as Plaintiff alleges, Defendants' investigation and

evaluation of Plaintiff's claim for benefits may not have been error-free, this does not resolve the

factual dispute over whether Plaintiff was totally disabled within the meaning of the Policies.  As

example, Plaintiff contends that Defendants utilized the wrong standard to determine that

Plaintiff was not totally disabled.  Plaintiff claims that the Policies at issue here are "Professional

Disability" policies which only require that the Plaintiff be unable to perform the major duties of

his occupation, *not* that he be unable to perform any work at all.  Because Plaintiff was unable to

perform his duties of his stated occupation, international meat trader, Plaintiff argues that the fact

that he was able to work in various other capacities does not prevent him from being deemed

totally disabled.  Taking these allegations as true, however, still does not entitle Plaintiff to

summary judgment.  Genuine issues of material fact remain as to whether Plaintiff's other work

activities were truly different from the duties that he performed as an international meat trader.

During the period of his alleged disability, Plaintiff was able to start two businesses engaged in

**NOT FOR PUBLICATION**

selling meat.  Whether Plaintiff's duties in running these businesses were actually different from

Plaintiff's duties as an international meat trader is open to considerable debate.

There also remains a genuine issue of material fact as to count two of the Amended

Complaint.  That count alleges that Defendants breached the obligations under the Individual

Policy by denying Plaintiff benefits under the Residual Disability Benefits Rider ("Rider").

Under the Rider, Plaintiff would qualify for reduced benefits for residual disability even if he is

able to work and not totally disabled, provided that, because of the injury or sickness, he is "not

able to earn at a rate of at least 80% of [] prior income."  Lesko Cert., Ex. A, p. 11.  Although

Plaintiff has submitted evidence that after the onset of his mental illness, his income has declined

to below 80% of his earlier income, Plaintiff has not submitted sufficient evidence to establish as

a matter of law that the decline in income was caused by his illness and not by other factors.

Finally, Defendants' denial of benefits based on its interpretation of the Proof of Loss

provision was not per se unreasonable.  As Defendants have often repeated, this Court agreed

with their interpretation of the Proof of Loss provision based on a New Jersey appellate opinion

although it was reversed on appeal.  Moreover, the basis of the Third Circuit's reversal was not

clearly established New Jersey Supreme Court precedent but a "prediction" of how that court

would rule.  See Knoepfler, 438 F.3d at 288 ("We predict that the New Jersey Supreme Court

would construe the policy language to require proof of loss after the end of the entire period of

disability" instead of "after the end of each month of disability.").  Even before the Third

Circuit's ruling, how this Court should interpret the Proof of Loss provision was not pre-

ordained.  The case law among the states indicated that there is a majority view and a minority

**NOT FOR PUBLICATION**

view.  We cannot say that the courts following the minority view are unreasonable.  Although Defendants interpreted the ambiguity in their favor, that interpretation was not without a reasonable basis.  The existence of a reasonable basis for Defendants' decision thus precludes Plaintiff's claim for bad faith.  See Pickett, 131 N.J. at 473 ("To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy").

In sum, Plaintiff would not be entitled to summary judgment as a matter of law on the underlying claims for breach of contract because there remains genuine disputes of fact. Following Pickett, Defendants' motion for summary judgment as to the bad faith claim, count four of the Amended Complaint, is granted.

## II.   Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim

Punitive damages are generally not recoverable in a contract action.  See Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 335 (D.N.J. 1996) ("the duties of an insurer . . . are a matter of contract law," therefore "punitive damages are . . . generally not recoverable"). Under New Jersey law, "in order to sustain a claim for punitive damages, a plaintiff would have to show something other than a breach of the good-faith obligation . . .[;] absent egregious circumstances, no right to recover for emotional distress or punitive damages exists for an insurer's allegedly wrongful refusal to pay a first-party claim." Pickett, 131 N.J. at 475-76.   The claimant must demonstrate "egregious circumstances," meaning that the insurer's conduct must be "wantonly reckless or malicious." Polizzi Meats, 931 F. Supp. at 335; Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49, 477 A.2d 1224 (1984) ("To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There

**NOT FOR PUBLICATION**

must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another.").

Plaintiff has not alleged or produced any evidence to permit a reasonable jury to conclude that Defendants acted with wanton recklessness or malice.  Plaintiff's arguments that Defendants failed to credit the diagnoses of four treating providers and continued to deny Plaintiff's claim over a period of twelve years, are legally insufficient to warrant punitive damages.  If Defendants had a reasonable basis to deny Plaintiff's claim, it is irrelevant that Defendants persisted in their denial for ten or more years.  Accordingly, Defendants' motion for summary judgment as to the punitive damages claim, count five of the Amended Complaint, is granted.

**CONCLUSION**

For the stated reasons, Defendants' motion for partial summary judgment on counts four and five of the Amended Complaint is granted.  Plaintiff's cross-motion for summary judgment on the same counts is denied.

**s/William H. Walls**
United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances:**

Jay D. Fischer
Fischer Porter & Thomas, P.C.
180 Sylvan Avenue
Second Floor
Englewood Cliffs, NJ 07632-2700

Robert E. Margulies
Margulies, Wind & Herrington, P.C.
Harborside Financial Center
Plaza 10 - Suite 1201
3 Second Street
Jersey City, NJ 07311-3988

     Attorneys for Plaintiff Jerrold B. Knoepfler

David R. Kott
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07101-0652

     Attorney for Defendants The Guardian Life Insurance Company of
     America and Berkshire Life Insurance Company of America