NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERROLD B. KNOEPFLER, : : : Plaintiff, : : v. : : THE GUARDIAN LIFE INSURANCE : COMPANY OF AMERICA and : BERKSHIRE LIFE INSURANCE : COMPANY OF AMERICA, : : Defendants. : : | **OPINION** <br><br> Civ. No. 01-5186 (WHW) |

**Walls, Senior District Judge**

The law firm of Fisher Porter Thomas & Reinfeld, P.C. ("Fisher") has requested that the Court issue an Order to Show Cause relating to a contingency fee dispute between it and plaintiff. The Court finds that it lacks subject matter jurisdiction over the contingency fee dispute. Fisher's request is denied.

### BACKGROUND

This matter was settled by the parties on July 19, 2010, in the middle of a jury trial. After counsel for both parties stated on the record that they had executed a signed settlement agreement, the Court required plaintiff to testify under oath that he accepted the settlement and that this action was forever closed. Plaintiff testified under oath that he had signed a settlement agreement with defendants, was satisfied with the legal representation provided by his counsel (the law firm of Margulies Wind, P.C.), and that he would never again pursue legal action against defendants for the claims at issue. On that date, this matter concluded. On July 27, 2010, the

parties submitted a stipulation and order of dismissal, reaffirming that the parties' settlement had ended this litigation.

On July 23, 2010, the firm Fisher, a non-party to this litigation which did not move to intervene under the federal rules, requested that the Court issue an Order to Show Cause in this action. Fisher states that it assisted Margulies Wind, P.C. in representing plaintiff from June 2006 until July 2009, at which time plaintiff terminated its agreement with Fisher. Fisher claims that this termination was without cause. Fisher represents that it spent 1150 hours working on the case, amounting to $331,759.17 in professional services rendered. Fisher avers that its out-of-pocket disbursements totaled $1,249.03. Fisher claims that it signed a contingency fee agreement with plaintiff that now entitles it to attorneys' fees.

Plaintiff states that he terminated Fisher for cause, with the result that Fisher is not entitled to attorney fees in this action. Plaintiff also asks the Court to deny Fisher's request on the grounds that Fisher lacks standing before the Court in this matter and the Court lacks subject matter jurisdiction over this action.

## STANDARD OF REVIEW

District courts "have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte." Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995). Subject matter jurisdiction exists on the basis of diversity jurisdiction where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

"A federal court invokes ancillary jurisdiction over an incident to a matter where it has acquired jurisdiction of a case in its entirety and, as an incident to the disposition of the primary matter properly before it. It may resolve other related matters which it could not consider

were they independently presented." United States v. Dunegan, 251 F.3d 477, 478-79 (3d Cir. 2001). Significantly, the doctrine of ancillary jurisdiction "does not give district courts the authority to reopen a closed case whenever a related matter subsequenty arises." Dunegan, 251 F.3d at 479. A court's exercise of ancillary jurisdiction is discretionary. See Baretto v. Reed, No. 93-2811, 1994 U.S. Dist. LEXIS 10463, at *2 (E.D. Pa. July 28, 1994) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1965)).

## DISCUSSION

Fisher appears to be a New Jersey law firm: on its website, all five of its partners are listed as having their offices in New Jersey. Plaintiff is a New Jersey resident. It follows that diversity jurisdiction is not present.

The Third Circuit has held that, although attorneys' fee arrangements are primarily matters of state contract law, district courts have ancillary jurisdiction "to resolve attorney-fee disputes in cases pending before federal courts." Novinger v. Lesonal-Werke, 809 F.2d 212, 217 (3d Cir. 1987). The purpose of allowing ancillary jurisdiction in these circumstances is that the attorney-client fee arrangement "bear[s] directly upon the ability of the court to dispose of cases before it in a fair matter." Novinger, 809 F.2d at 217. In Novinger, the plaintiffs purported to discharge their attorney Steven M. Kramer, who had filed the complaint on plaintiffs' behalf. At that time, Kramer asserted an attorneys' retaining lien on the Novingers' file, and the district court entered an order requiring Kramer to show cause why he should not be required to turn his case file to the attorneys succeeding him. The district court then entered an order requiring Kramer to turn over his files and stating that "[a]t the conclusion of the case the court will determine what expenses and attorneys' fees should be paid to Steven M. Kramer. Due to the unique fee and expense arrangement existing between the Novingers and Mr. Kramer, the court will not order

payment of expenses at this time." <u>Novinger</u>, 809 F.2d at 214 (quoting April 9, 1981 Order). The Third Circuit emphasized the importance of district courts possessing ancillary jurisdiction over contingency fee disputes in this context, stating:

> If the federal forum were powerless either to order counsel to turn over a file or to authorize voluntary withdrawal in the face of such differences, the court's ability to dispose of the case would be severely limited. Thus there cannot be any question that the court has authority to enter orders such as those directing Kramer to surrender the file upon which he claimed a state law retaining lien, and permitting Smith and Swartz to withdraw. This power necessarily includes the power to resolve disputes with respect to the payment of attorneys' fees and expenses. Moreover, in the context of contingent fee litigation the nature of such disputes is such that they cannot be resolved at the time the court acts to permit substitution of counsel. At that point in the lawsuit the reasonable value of the attorney's services cannot be determined because it must be measured, at least in part, against the results obtained. Thus the rule of necessity with respect to attorney-client disputes growing out of the substitution of attorneys in the course of litigation must be broad enough to permit the resolution of those disputes after the underlying case has been resolved by judgment or settlement.

<u>Novinger</u>, 809 F.2d at 217.

Here, unlike in <u>Novinger</u>, the terminated law firm (Fisher) did not request a lien or appear on its own behalf in any context before the case was conclusively resolved. At the time Fisher moved the Court to issue an Order to Show Cause, this case was effectively terminated, and was no longer "pending." This sharply distinguishes the circumstances here from those in <u>Novinger</u>, where the terminated lawyer, immediately upon his termination, asserted a retaining lien, and where the district order issued an order stating that the lawyer's attorneys' fees would be determined by the court at the end of the case. In that instance, the court's ancillary jurisdictional power to resolve the contingency fee dispute after the case was settled contributed to the court's ability to manage and resolve the case.

By contrast, this Court had no knowledge that Fisher was in the background waiting for the case to settle before asserting an attorneys' lien. In effect, Fisher has remained in the shadows, waited for this case to be terminated, and now attempts to resuscitate the defunct action. A finding of ancillary jurisdiction would resurrect a now-dismissed litigation, rather than facilitate the disposal of it. This result would directly contravene the Third Circuit's rationale to permit ancillary jurisdiction when the incidental dispute arose (or was at least noticed) while the underlying action was pending. The Court declines to exercise ancillary jurisdiction over Fisher's claims in this action.

The Court further notes that the Attorney Lien Act, N.J.S.A. 2A:13-15, relied on by Fisher, is a state law statute that does not – and could not – purport to confer jurisdiction to a federal court where such jurisdiction does not otherwise exist. It is true, as Fisher notes, that the New Jersey Supreme Court has not interpreted the Attorney Lien Act "to require an attorney to file and enforce a lien petititon prior to settlement or judgment in the underlying action." Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 146 (2002). As a result, Fisher's assertion of a lien may comply with the process requirements of New Jersey law. However, this is a pointedly different question from whether this Court has jurisdiction over Fisher's claims. As a state law statute, the Attorney Lien Act does and cannot speak to this question. Fisher's request may be resolved in the appropriate forum, the Superior Court of New Jersey. This Court finds that it does not have jurisdiction.

## CONCLUSION

The Court finds that it lacks subject matter jurisdiction over Fisher's request for the Court to issue an Order to Show Cause.


July 28, 2010                                                              s/William H. Walls
                                                                           United States Senior District Judge